AO 91 (Rev. 11/11)  Criminal Complaint

**Sealed**
Public and unofficial staff access to this instrument are prohibited by court order

# UNITED STATES DISTRICT COURT
### for the
### Southern District of Texas

United States Courts
Southern District of Texas
**FILED**
*February 04, 2025*
Nathan Ochsner, Clerk of Court

| United States of America | ) | |
|---|---|---|
| v. | ) | |
| David Lam | ) | Case No. 4:25-mj-0053 |
| | ) | |
| *Defendant(s)* | ) | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of __Oct. 19, 2022__ in the county of __Harris__ in the __Southern__ District of __Texas__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. 371 | Conspiracy to defraud United States / conspiracy to commit theft of public funds |

This criminal complaint is based on these facts:

See attached affidavit from SSA-OIG Agent Steven Ochocki

☐ Continued on the attached sheet.

*Complainant's signature*

Steven Ochocki, Special Agent (SSA-OIG)
*Printed name and title*

Sworn to before me and signed in by telephone

Date: February 04, 2025

*Judge's signature*

City and state: Houston, Texas

Hon. US Magistrate Judge Christina A. Bryan
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT ANDARREST WARRANT

I, Steven Ochocki, a Special Agent assigned to the Social Security Administration – Office of the Inspector General ("SSA-OIG"), being first duly sworn, hereby depose and state as follows:

### INTRODUCTION

1. There is probable cause to believe that David Lam ("Lam") engaged in a scheme to fraudulently obtain government funds to which he is not entitled by misusing his official position as an employee of the Social Security Administration ("SSA"). The government's ongoing investigation has revealed that Lam used his access of SSA systems and knowledge of SSA policies to identify recently deceased men in Texas with unused Child Survivor Benefits. Since SSA will pay benefits to minor-age children when a dependent parent (who worked and paid Social Security taxes) dies, Lam orchestrated a fraudulent scheme where he directed women with children to apply for Child Survivor Benefits under the SSA records of men they never met. The government's investigation indicates that Lam provided the women with the full name, date of birth, date of death, and social security number of the deceased men, and instructed the women to tell SSA that their children were living with the deceased men at the time of death. Since Texas recognizes common-law marriage, Lam could ensure that the children qualified for Child Survivor Benefits as "stepchildren" under the SSA records of the deceased men. In truth, however, the investigation indicates that these women had no known connections to the deceased men. Often, the men's obituaries identified girlfriends or other family members—but not the women who applied for the SSA benefits. The investigation indicates that the women who participated in this scheme typically agreed to send Lam approximately half of the monthly benefits obtained from SSA. Thus far, the investigation has identified at least eight women who participated directly with Lam in this fraudulent scheme for a total loss of over $1,375,000 to the U.S. Government.

### AGENT BACKGROUND

2. I have been employed as a Special Agent with the SSA-OIG since 2022. I am a federal law enforcement officer within the meaning of Federal Rule of Criminal Procedure 41(a)(2), that is, a government agent engaged in enforcing the criminal laws and duly authorized by the Attorney General to make arrests.

3. From 2012 to 2022, I worked for three different police departments: the Ocean City Police Department (Ocean City, Maryland); the District of Columbia Metropolitan Police Department (Washington, D.C.); and the United States Park Police (Washington, D.C.). As a police officer, I have investigated over 2,500 cases of varying complexity, including armed robberies, burglaries, theft of motor vehicles, cruelty to children, cruelty to animals, sexual assaults, possession of controlled substances, and illegal possession of firearms. I have graduated from four law enforcement academies for a total of 2,501 hours of academy instructions: Ocean City Seasonal Police Officer Training at the Eastern Shore Criminal Justice Academy (Maryland); the D.C. Metropolitan Police Academy (Washington, D.C.); the Uniformed Police Training Program at the Federal Law Enforcement Training Center (Glynco, GA); and the Criminal Investigation Training Program at the Federal Law Enforcement Training Center (Glynco, GA). As a Special Agent, I investigate criminal violations involving Social Security programs and social security numbers, including cases involving theft of government funds and employee misconduct.

4. The facts in this affidavit come from my personal observations, my training and experience, information obtained from other agents, law enforcement, and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all my knowledge about this matter.

5. The grounds for issuance of this warrant come from my personal knowledge of matters set out in this affidavit. To the extent any information in this affidavit is not within my personal knowledge, it was made known to me through my own review of records provided by financial institutions and interviews of witnesses, and through reliable law enforcement sources, including discussions with other law enforcement agents, which has caused me to believe the information to be true.

6. Based on my training, experience, and the facts set forth in this affidavit, there is probable cause to believe that Lam has committed several criminal violations, including but not limited to 18 U.S.C. § 371 (Conspiracy to Defraud the United States).

## PROBABLE CAUSE AND OVERVIEW OF FRAUDULENT SCHEME

7. Lam is currently employed as a claims specialist at the SSA Southeast Field Office located at 8989 Lakes at 610 Dr, Houston, TX 77054. Earlier in his time at the SSA, Lam was an operations supervisor. He was demoted in 2022 after a prior SSA-OIG investigation revealed that Lam was utilizing his government issued computer during work hours to operate a t-shirt business he owned named "97 Graphix."

8. In April 2024, SSA-OIG commenced a new investigation into fraudulent benefits applications. This investigation revealed that Lam was working as an inside source at the agency to facilitate the fraud. To date, the investigation has revealed that Lam conspired with others, including Co-Conspirator #1, Co-Conspirator #2, Co-Conspirator #3, Co-Conspirator #4, Co-Conspirator #5, Co-Conspirator #6, Co-Conspirator #7, and Co-Conspirator #8 to steal Child Survivor Benefits from the SSA. Based on the interviews conducted to date and the evidence gathered so far, it appears the scheme works in four steps:

   a. *First*, Lam finds a mother with at least two children willing to lie to SSA to obtain benefits. Lam needs the women to have two children so that SSA sends each child their own benefits and he can receive about half of the benefits from the mother.

   b. *Second*, Lam uses the SSA system to identify a recently deceased male with unused Child Survivor Benefits. In general, Lam appears to wait a few months before directing his accomplice to apply for benefits under the male's record.

   c. *Third*, Lam directs the mother to submit applications to SSA and complete Child Survivor Benefit Applications for their children by using the personal identifiable information (PII) of the deceased man. Lam provides the name, date of birth, date of death, and social security number of the deceased male victim to the woman involved in the fraudulent scheme, and instructs the woman involved to tell SSA that her children were living with the deceased at the time of his death. In at least one instance (Co-Conspirator #1), Lam provides the PII and instruction by text. By doing this, Lam specifically exploits SSA's

      vulnerability to common-law marriages and the lack of documentation regarding common-law marriages.

    d. *Fourth*, Lam requires the women involved to share the illegal obtained SSA benefits on a monthly basis with him. Based on financial records, it appears that Lam's aim is to evenly split the benefits with his accomplices.

9. So far, agents have identified at $1,375,000 in fraudulent payments that Lam has facilitated through this scheme involving the eight women described above.

## LAM's $40,000 SCHEME WITH CO-CONSPIRATOR #1

10. In April 2024, SSA-OIG was informed that Co-Conspirator #1 fraudulently applied for and received Child Survivor Benefits for her son E.B. and her daughter A.B. under the SSA record of the late Victim #1. Victim #1 died on January 14, 2023, in Houston, Texas. His obituary does not mention any significant other or any children. The SSA records of E.B. and A.B. reveal that an individual named E.B.J. is their father, not Victim #1. On July 11, 2023, Co-Conspirator #1 applied for Child Survivor Benefits for her children at the SSA Pasadena Texas Office located at 3300 Waters Rd., Pasadena, TX 77504. She falsely claimed that her children lived with Victim #1 at the time of his death. Victim #1's sister and neighbor were interviewed, and both were adamant that Victim #1 did not have any children or stepchildren, and he was not in a relationship with a woman named Co-Conspirator #1.

11. Your Affiant interviewed Co-Conspirator #1 on April 27, 2024, and she admitted that she and her children never met or lived with Victim #1. She also admitted that she fraudulently applied for Child Survivor Benefits because she needed the money. Co-Conspirator #1 told us that she contacted Lam after a former co-worker told her about Lam's ability to access "unused insurance benefits." According to Co-Conspirator #1, Lam texted her the name, date of birth, date of death, and social security number of Victim #1. Lam texted Co-Conspirator #1 through mobile number 832-335-5056. He directed Co-Conspirator #1 to tell SSA that her children were living with Victim #1 at the time of his death. Co-Conspirator #1 followed Lam's instructions and used Victim #1's PII to apply for Child Survivor Benefits.

12. Co-Conspirator #1's children were approved for benefits and SSA allowed Co-Conspirator #1 to be their representative payee and manage their SSA benefits. In return for providing the information needed to complete the scheme, Co-Conspirator #1 sent Lam about half of the monthly benefits intended for her two children from July 2023 to April 2024. SSA stopped the benefits in April 2024 when an employee discovered that Co-Conspirator #1 and her children were not mentioned in Victim #1's obituary. From July 2023 to April 2024, SSA sent approximately $40,000 to Co-Conspirator #1 for her children, and she split this amount with Lam. Financial records from Stride Bank and Chime revealed that Co-Conspirator #1 sent Lam multiple monthly payments to share the SSA money. During her interview, Co-Conspirator #1 told agents that once SSA stopped the payments, Lam told her to delete all the text messages on her phone. Co-Conspirator #1 showed us Lam's profile in Chime and the $1,500 payments that she sent him through Chime on February 29, 2024, and March 15, 2024.

13. Pictures of Lam's profile in Chime on Co-Conspirator #1's phone, including Lam's mobile phone number.



## LAM's $350,000 SCHEME WITH CO-CONSPIRATOR #2

14.     A review of Lam's bank records with JP Morgan Chase indicates that Lam committed the same fraudulent Child Survivor Benefit scheme with Co-Conspirator #2. Co-Conspirator #2 has sent Lam at least the following payments through Zelle:

- $910 (10/19/2022)
- $1,000 (09/23/2022)
- $725 (10/12/2022)
- $1,300 (09/14/2022)
- $910 (07/25/2022)
- $700 (07/25/2022)
- $560 (06/30/2022)
- $710 (07/07/2022)
- $910 (05/23/2022)
- $725 (04/18/2022)
- $910 (02/16/2022)
- $725 (02/16/2022)
- $725 (01/14/2022)
- $910 (01/24/2022)
- $910 (12/15/2021)
- $910 (11/17/2021)
- $725 (11/17/2021)
- $725 (12/08/2021)

- $910 (10/20/2021)
- $910 (09/15/2021)
- $725 (10/13/2021)
- $910 (08/18/2021)
- $725 (09/08/2021)
- $910 (07/21/2021)
- $725 (08/11/2021)
- $725 (06/14/2021)
- $910 (06/16/2021)
- $725 (07/14/2021)
- $910 (05/20/2021)
- $725 (04/14/2021)
- $910 (04/23/2021)
- $725 (05/12/2021)
- $910 (02/22/2021)
- $1,451 (03/10/2021)
- $910 (01/20/2021)
- $1,451 (02/10/2021)
- $910 (12/16/2020)
- $1,451 (01/13/2021)
- $910 (11/18/2020)
- $1,451 (12/10/2020)
- $910 (10/22/2020)
- $1,451 (11/10/2020)
- $910 (09/16/2020)
- $1,451 (10/14/2020)
- $910 (08/19/2020)
- $1,451 (09/09/2020)
- $910 (07/15/2020)
- $1,451 (08/12/2020)
- $910 (06/17/2020)
- $1,451 (07/08/2020)
- $910 (05/20/2020)
- $1,451 (06/11/2020)
- $910 (04/15/2020)
- $1,451 (05/13/2020)
- $910 (03/18/2020)
- $1,451 (04/08/2020)
- $910 (02/19/2020)
- $910 (01/15/2020)
- $1,451 (02/12/2020)
- $910 (12/18/2019)
- $1,451 (01/08/2020)
- $910 (11/20/2020)

- $1,451 (12/11/2019)
- $910 (10/16/2019)
- $1,451 (11/13/2019)
- $910 (09/18/2019)
- $1,451 (10/09/2019)
- $1,451 (08/14/2019)
- $910 (08/21/2019)
- $1,451 (09/11/2019)
- $750 (07/17/2019)
- $160 (07/18/2019)
- $910 (06/19/2019)
- $1,451 (07/10/2019)
- $910 (05/15/2019)
- $1,451 (06/12/2019)
- $910 (04/17/2019)
- $1,451 (05/08/2019)
- $910 (03/22/2019)
- $1,451 (04/11/2019)
- $1,451 (02/14/2019)
- $910 (02/20/2019)
- $910 (01/17/2019)
- $910 (12/20/2018)
- $1,451 (01/09/2019)

15. Co-Conspirator #2's SSA record reflects that she has three children: two sons (J.A.J. and J.J.), and one daughter (M.J.).

16. Her SSA record shows that she is currently the representative payee managing the Child Survivor Benefits for her son J.A.J. SSA is distributing benefits for J.A.J. under the record of the late Victim #2. However, J.A.J.'s SSA record lists his father as J.J. (his initials are also J.J.)

17. Up until March 2021, SSA was also distributing Child Survivor Benefits to Co-Conspirator #2's other son, J.J., under the record of the late Victim #2. But, like J.A.J., J.J.'s father is also listed as father-J.J. Son-J.J. aged out of the Child Survivor Benefits in March 2021.

18. On October 18, 2024, your Affiant located Victim #2's obituary. Co-Conspirator #2 is not mentioned in his obituary, nor is J.A.J. or son-J.J. The obituary lists Victim #2's family but does not mention any significant other or children. Victim #2 died on June 22, 2017, in Houston, Texas.

19. Your Affiant reviewed the Application for Child Survivor Benefits that Co-Conspirator #2 submitted for J.A.J. and son-J.J. The application was submitted on September 13, 2017. In the application, Co-Conspirator #2 claimed that her sons were living with Victim #2 at the time of his death. Co-Conspirator #2 listed Victim #2's full name, date of birth, date of death, and social security number on the application.

20. A review of SSA records showed that Co-Conspirator #2 also applied for Child Survivor Benefits for her daughter, M.J., under the record of the late Victim #3. However, M.J.'s SSA record lists her father as father J.J. M.J. was approved for benefits, but the benefits stopped in October 2022 when she aged out.

21. On October 18, 2024, your Affiant located Victim #3's obituary. That obituary indicates that he died on August 23, 2017, in Houston, Texas, just two months after Victim #2's death on June 22, 2017. Of course, it would be highly unusual for Co-Conspirator #2 to lose two common-law husbands within two months.

22. Agents also reviewed the Application for Child Survivor Benefits that Co-Conspirator #2 submitted for M.J. The application was submitted on November 25, 2017. Co-Conspirator #2 claimed that her daughter was living with Victim #3 at the time of his death. Co-Conspirator #2 provided Victim #3's full name, date of birth, date of death, and social security number on the application. It appears Lam and Co-Conspirator #2 likely used the records of two deceased men for her three children to get around the family limit on Survivor Benefits. The current SSA family maximum formula "yields a maximum for each family that is between 150 precent and 188 percent of the (*deceased*) worker's basic Social Security benefits."[1] If the total amount of benefits a family receives exceeds the family maximum, SSA will reduce each payment equally until the total matches the limit. Co-Conspirator #2 avoided the reduction by claiming Child Survivor Benefits under the SSA records of two deceased men.

23. The investigation revealed that Lam utilized his position as an employee of SSA to perpetuate the fraud. SSA has systems in place to monitor the activity of its employees and the history of beneficiaries' applications. For example, SSA maintains a detailed "Visitor Intake Process Rewrite ("VIPr"), a computer program that tracks claims and processing activity. Similarly, in order to ensure that employees act appropriately in the course of performing their job duties, SSA utilizes an Audit Trail System ("ATS"). The ATS collects data each time an employee, contractor, or member of the public performs an auditable task or transaction. Each record on the ATS contains the personal identification number ("PIN") of the employee entering the transaction as well as the date, time, and other application-specific data.

24. Lam's PIN data shows that he accessed both M.J.'s and Victim #3's SSA records on August 18, 2018. Additionally, Lam approved two early payments to Co-Conspirator #2 for M.J.'s Child Survivor Benefits. One of the early payments was in 2017 and the other was in 2018.

25. This indicates that Lam had direct involvement in the fraudulent scheme. In addition, the monthly payments that Co-Conspirator #2 sent to Lam from January 2019 to November 2022 are also consistent with the pattern in which he receives a share of the illegal payments. Since November 2017, SSA has sent over $350,000 in Child Survivor Benefits to Co-Conspirator #2. Although her other two children aged out, the benefits for J.A.J. were active as of January 2025.

---

[1]  https://www.ssa.gov/policy/docs/ssb/v75n3/v75n3p1.html

**LAM's $150,000 SCHEME WITH CO-CONSPIRATOR #3**

26. A review of Lam's JP Morgan Chase bank records indicates that Lam committed the same fraudulent Child Survivor Benefit scheme with Co-Conspirator #3. Co-Conspirator #3 has sent Lam at least the following payments through Zelle:

- $600 (04/05/2024)
- $700 (12/12/2023)
- $600 (09/28/2023)
- $600 (09/29/2023)
- $1,000 (05/30/2023)
- $1,000 (03/31/2023)
- $1,000 (11/21/2022)
- $1,000 (08/19/2022)
- $1,000 (08/30/2022)
- $1,100 (04/18/2022)
- $1,000 (02/11/2022)
- $1,000 (12/30/2021)
- $1,000 (11/30/2021)
- $1,000 (11/08/2021)
- $1,000 (09/27/2021)
- $1,000 (08/30/2021)
- $1,000 (08/04/2021)
- $1,000 (06/29/2021)
- $1,000 (05/28/2021)
- $1,000 (05/04/2021)
- $1,000 (03/29/2021)
- $1,000 (02/25/2021)

27. Co-Conspirator #3' SSA record shows that she is currently the representative payee managing the Child Survivor Benefits for her daughters A.L. and C.M. Both children are receiving benefits under the record of the late Victim #4, even though both of their SSA records list their father as A.L.

28. On October 18, 2024, your Affiant located Victim #4' obituary. Co-Conspirator #3 is not mentioned in his obituary, nor is A.L. or C.M. Instead, the obituary lists Victim #4' girlfriend as J.E. Additionally, the obituary states that Victim #4 lived in Austin, Texas. Co-Conspirator #3 lived in Houston at the time of his death on March 7, 2019.

29. Your Affiant reviewed the Application for Child Survivor Benefits that Co-Conspirator #3 submitted for A.L. and C.M. The application was submitted on July 24, 2019, and Co-Conspirator #3 claimed that her children were living with Victim #4 at the time of his death. Co-Conspirator #3 listed Victim #4' full name, date of birth, date of death, and social security number on the application.

30. While Co-Conspirator #3 submitted the Child Survivor Benefits Application on July 24, 2019, PIN data shows that Lam accessed the SSA records of A.L., C.M., and Victim #4 six days later on July 30, 2019. Lam accessed SSA systems to help process Co-Conspirator #3's

fraudulent application. Since August 2019, SSA has sent over $150,000 in Child Survivor Benefits to Co-Conspirator #3. She is sharing these illegal benefits with Lam. The benefits are still active at this time.

### LAM's $100,000 SCHEME WITH CO-CONSPIRATOR #4

31. A review of Lam's bank records with JPMorgan Chase indicates that Lam committed the same fraudulent Child Survivor Benefit scheme with Co-Conspirator #4. Co-Conspirator #4 has sent Lam at least the following payments through Zelle:

- $4,714 (07/24/2024)
- $2,357 (05/22/2024)
- $2,357 (04/24/2024)
- $2,357 (03/27/2024)
- $2,357 (02/29/2024)
- $2,357 (01/24/2024)
- $2,357 (12/28/2023)
- $2,357 (11/22/2023)
- $2,357 (10/26/2023)
- $2,357 (09/28/2023)
- $2,357 (08/25/2023)
- $2,357 (07/28/2023)
- $339 (06/23/2023)
- $3,200 (06/01/2023)
- $3,000 (06/05/2023)
- $3,000 (06/09/2023)

32. Co-Conspirator #4's SSA record shows that she is currently the representative payee managing the Child Survivor Benefits for her daughters K.G. and M.G. Both children are receiving the benefits under the record of the late Victim #5, even though both of their SSA records list their father as J.E.G.

33. On October 18, 2024, your Affiant located Victim #5's obituary. Co-Conspirator #4 is not mentioned in his obituary, nor is K.G. or M.G. Instead, the obituary lists Victim #5's girlfriend as a woman named M.P. Additionally, the obituary states that Victim #5 lived in Fort Worth, Texas. Co-Conspirator #4 was living in Houston, Texas at the time of his death on December 13, 2022.

34. Your Affiant reviewed the Application for Child Survivor Benefits that Co-Conspirator #4 submitted for K.G. and M.G. The application was submitted on May 24, 2023, and Co-Conspirator #4 claimed that her children were living with Victim #5 at the time of his death. Co-Conspirator #4 listed Victim #5's full name, date of birth, date of death, and social security number on the application.

35. Since May 2023, SSA has sent over $100,000 in Child Survivor Benefits to Co-Conspirator #4. She is sharing these illegal benefits with Lam.

### LAM's $140,000 SCHEME WITH CO-CONSPIRATOR #5

36. A review of Lam's JP Morgan Chase bank records indicates that Lam committed the same fraudulent Child Survivor Benefit scheme with Co-Conspirator #5. Co-Conspirator #5 has sent Lam at least the following payments through Zelle:

- $650 (09/15/2021)
- $650 (08/18/2021)
- $680 (07/21/2021)
- $680 (06/18/2021)
- $650 (05/16/2021)
- $650 (04/21/2021)
- $650 (01/20/2021)
- $650 (12/17/2020)
- $650 (11/18/2020)
- $650 (10/21/2020)
- $650 (09/16/2020)
- $650 (08/19/2020)
- $650 (07/15/2020)
- $680 (06/17/2020)
- $680 (05/20/2020)
- $650 (04/15/2020)
- $1,300 (03/18/2020)
- $680 (01/15/2020)
- $650 (12/19/2019)
- $680 (11/20/2019)
- $650 (10/16/2019)
- $650 (09/18/2019)
- $650 (08/21/2019)
- $680 (07/17/2019)
- $680 (06/19/2019)
- $680 (05/15/2019)
- $680 (04/18/2019)
- $680 (03/20/2019)
- $680 (02/20/2019)
- $680 (01/16/2019)
- $680 (12/19/2018)

37. Co-Conspirator #5's SSA record shows that she is currently the representative payee managing the Child Survivor Benefits for her son A.A. and her daughter A.J.A. Both children are receiving the benefits under the record of the late Victim #6, even though both of their SSA records list their father as A.A (his initials are also A.A.).

38. On October 18, 2024, your Affiant located Victim #6's obituary. Co-Conspirator #5 is not mentioned in his obituary, nor is son-A.A. or A.J.A. Although Victim #6's family members are mentioned, no mention is made of any significant other or children. Victim #6 died in Houston, Texas on April 20, 2015.

39. Your Affiant reviewed the Application for Child Survivor Benefits that Co-Conspirator #5 submitted for A.A. and A.J.A. The application was submitted on September 26, 2017, and Co-Conspirator #5 claimed that her children were living with Victim #6 at the time of his death. Co-Conspirator #5 also listed Victim #6's full name, date of birth, date of death, and social security number on the application.

40. On September 26, 2017, Co-Conspirator #5 also applied for the Lump-Sum Death Payment under Victim #6's record. She specifically told SSA: "THE DECEASED WAS LAST MARRIED TO [CO-CONSPIRATOR #5] ON January 1, 2014 IN TX BY A CLERGYMAN OR PUBLIC OFFICIAL. THE MARRIAGE ENDED BY DEATH ON April 21, 2015." Your Affiant has been unable to locate a record of this marriage. Notably, the benefits application was submitted over two years after Victim #6's death.

41. Since October 2017, SSA has sent over $140,000 in Child Survivor Benefits to Co-Conspirator #5. She is sharing these illegal benefits with Lam.

### LAM's $275,000 SCHEME WITH CO-CONSPIRATOR #6

42. A review of David LAM's Main JP Morgan Account (ending in 2076) indicates that Co-Conspirator #6 has sent him monthly Zelle payments of $2,149 each month since May 21, 2021. Co-Conspirator #6 has sent Lam at least the following payments through Zelle:

- $2,149 (05/23/2024)
- $2,149 (04/17/2024)
- $2,149 (03/20/2024)
- $2,149 (02/21/2024)
- $2,149 (01/17/2024)
- $2,149 (12/21/2023)
- $2,149 (11/15/2023)
- $2,149 (10/18/2023)
- $2,149 (09/20/2023)
- $2,149 (08/16/2023)
- $2,149 (07/17/2023)
- $2,149 (06/21/2023)
- $2,149 (05/18/2023)
- $2,149 (04/20/2023)
- $2,149 (03/16/2023)
- $2,149 (02/17/2023)
- $2,149 (01/18/2023)
- $2,149 (12/23/2022)
- $2,149 (11/16/2022)
- $2,149 (10/20/2022)
- $2,149 (09/22/2022)
- $2,149 (08/17/2022)
- $2,149 (07/20/2022)
- $2,149 (06/22/2022)
- $2,149 (05/25/2022)

- $2,149 (02/18/2022)
- $2,149 (01/20/2022)
- $2,149 (12/16/2021)
- $2,149 (11/18/2021)
- $2,149 (10/20/2021)
- $2,149 (09/15/2021)
- $2,149 (08/19/2021)
- $2,149 (07/22/2021)
- $2,149 (05/21/2021)

43. Your Affiant also reviewed David LAM's Cash App Account and learned that Co-Conspirator #6 has sent him at least the following Cash App payments:

- $2,149 (06/17/2021)
- $2,149 (04/22/2021)
- $2,149 (03/18/2021)
- $2,149 (02/18/2021)
- $2,149 (01/21/2021)
- $2,149 (12/16/2020)
- $2,149 (11/19/2020)
- $2,149 (10/21/2020)
- $2,149 (09/17/2020)
- $2,149 (08/20/2020)
- $2,149 (07/17/2020)
- $2,149 (06/17/2020)
- $2,149 (05/22/2020)
- $2,149 (04/16/2020)

44. Co-Conspirator #6's SSA record shows that she is currently the representative payee managing the Child Survivor Benefits for her son G.A.A. and her daughter G.Z.A. Both children are receiving the benefits under the record of the late Victim #7, even though both of their SSA records list their father as G.A.J. Before aging out in March 2023, Co-Conspirator #6's second son (also named G.A.A.) was also receiving Child Survivor Benefits under the record of the late Victim #7. His father is also listed as G.A.J. on his SSA record.

45. On December 17, 2024, your Affiant located Victim #7's obituary. Co-Conspirator #6 is not mentioned in his obituary, nor is G.A.A., G.Z.A., or her second son (also named G.A.A.). While Victim #7's family members are mentioned, no mention is made of any significant other or children. Victim #7 died on October 24, 2019.

46. Your Affiant reviewed the Application for Child Survivor Benefits that Co-Conspirator #5 submitted for all three children. The application was submitted on March 20, 2020, and Co-Conspirator #6 claimed that her children were living with Victim #7 at the time of his death. Co-Conspirator #6 also listed Victim #7's full name, date of birth, date of death, and social security number on the application.

47. Since March 2020, SSA has sent over $275,000 in Child Survivor Benefits to Co-Conspirator #6. She is sharing these illegal benefits with Lam.

### LAM's $230,000 SCHEME WITH CO-CONSPIRATOR #7

48. A review of David LAM's Cash App Account indicates that Co-Conspirator #7 has sent him monthly Cash App payments totaling in excess of $1,155 each month from March 2022 to August 2024. Co-Conspirator #7 has sent Lam at least the following payments through Cash App:

- $1,200 (08/14/2024)
- $1,200 (07/11/2024)
- $1,200 (06/13/2024)
- $1,200 (05/08/2024)
- $1,200 (04/10/2024)
- $1,200 (03/21/2024)
- $1,200 (02/15/2024)
- $1,200 (01/12/2024)
- $1,155 (12/14/2023)
- $1,155 (11/10/2023)
- $1,155 (10/12/2023)
- $1,155 (09/13/2023)
- $1,155 (08/10/2023)
- $1,155 (07/13/2023)
- $1,155 (06/15/2023)
- $1,155 (05/10/2023)
- $1,155 (04/12/2023)
- $1,155 (03/10/2023)
- $1,155 (02/10/2023)
- $1,155 (01/13/2023)
- $1,155 (12/17/2022)
- $1,155 (11/10/2022)
- $1,155 (10/14/2022)
- $155 (09/16/2022)
- $1,000 (09/14/2022)
- $155 (08/13/2022)
- $500 (08/11/2022)
- $500 (08/10/2022)
- $155 (07/15/2022)
- $500 (07/14/2022)
- $500 (07/13/2022)
- $155 (07/01/2022)
- $500 (06/10/2022)
- $500 (06/08/2022)
- $155 (05/19/2022)

- $500 (05/16/2022)
- $500 (05/12/2022)
- $155 (04/15/2022)
- $500 (04/14/2022)
- $500 (04/13/2022)
- $155 (03/28/2022)
- $500 (03/25/2022)
- $500 (03/23/2022)

49. Co-Conspirator #7's SSA record shows that she is currently the representative payee managing the Child Survivor Benefits for her two daughters both with the initials I.A.C. Both children are receiving the benefits under the record of the late Victim #8, even though the SSA record for one daughter lists an individual named V.J.S. as her father and the other daughter does not have the name of her father on her record.

50. On December 17, 2024, your Affiant located Victim #8' obituary. Co-Conspirator #7 is not mentioned in his obituary, nor are either of her two daughters. While Victim #8's family members are mentioned, no mention is made of any significant other or children. Victim #8 died on May 17, 2017.

51. Your Affiant reviewed the Application for Child Survivor Benefits that Co-Conspirator #7 submitted for two daughters. The application was submitted on November 27, 2017, and Co-Conspirator #7 claimed that her daughters were living with Victim #8 at the time of his death. Co-Conspirator #7 also listed Victim #8' full name, date of birth, date of death, and social security number on the application.

52. Since November 2017, SSA has sent over $230,000 in Child Survivor Benefits to Co-Conspirator #7. She is sharing these illegal benefits with Lam.

### LAM's $90,000 SCHEME WITH CO-CONSPIRATOR #8

53. A review of David LAM's PayPal Account indicates that D.J.R. has sent him monthly PayPal payments since August 2023. D.J.R. has sent Lam the following payments through PayPal:

- $1,975 (10/07/2024)
- $1,975 (09/04/2024)
- $1,975 (08/04/2024)
- $1,975 (07/08/2024)
- $1,975 (05/05/2024)
- $1,974 (01/04/2024)
- $2,000 (12/10/2023)
- $4,000 (10/24/2023)
- $4,000 (10/23/2023)
- $2,600 (10/06/2023)
- $4,000 (10/11/2023)
- $4,000 (10/07/2023)
- $4,000 (10/04/2023)

- $500 (09/08/2023)
- $1,500 (09/08/2023)
- $2,000 (08/29/2023)

54. SSA records show that D.J.R. is the father of Co-Conspirator #8. It appears that D.J.R. is paying David LAM on behalf of his daughter.

55. Co-Conspirator #8' SSA record shows that she is currently the representative payee managing the Child Survivor Benefits for her sons G.K.V. and W.I.K. Both children are receiving the benefits under the record of the late Victim #9, even though the SSA record for one son lists G.V. as his father and the other lists M.C.K.

56. On December 17, 2024, your Affiant located Victim #9's obituary. Co-Conspirator #8 is not mentioned in his obituary, nor is G.K.V. or W.I.K. Although Victim #9's family members are mentioned, no mention is made of any significant other or children. Victim #9 died on April 19, 2023.

57. Your Affiant reviewed the Application for Child Survivor Benefits that Co-Conspirator #8 submitted for two sons. The application was submitted on August 22, 2023, and Co-Conspirator #8 claimed that her sons were living with Victim #9 at the time of his death. Co-Conspirator #8 also listed Victim #9's full name, date of birth, date of death, and social security number on the application.

58. Since August 2023, SSA has sent over $90,000 in Child Survivor Benefits to Co-Conspirator #8. She appears to be sharing these illegal benefits with Lam by way of her father D.J.R.

## CRIMINAL CHARGES

59. Based on the information described above, I believe that probable cause exists for the issuance of a Criminal Complaint charging **DAVID LAM** with (1) one count of conspiracy to defraud the United States (18 U.S.C. § 371).

<u>Count One</u>
<u>Conspiracy to Defraud the United States (18 U.S.C. § 371)</u>

60. From May 2017 to the Present, within the Southern District of Texas, David Lam did knowingly combine, conspire, confederate, and agree with others known and unknown to commit the following offense against the United States:

> Whoever embezzles, steals, purloin, or knowingly converts to his use or the use of another . . . . any record, voucher, money, or thing of value of the United States or

of any department or agency thereof . . . [s]hall be fined under this title or imprisoned not more than ten years, or both. . . .

18 U.S.C. § 641.

61.  As outlined above, the object of this conspiracy was to steal money from the SSA through the submission and approval of fraudulent benefits applications, and then to divert that stolen money to Lam and other participants in the conspiracy.

62.  To further the conspiracy and accomplish its objectives, the conspirators, working with themselves and others known and unknown, knowingly committed (and/or caused others to commit) the following overt acts, and others, in the Southern District of Texas and elsewhere:

> On or about October 19, 2022, Coconspirator #2 sent Lam a $910 payment via Zelle.

All in violation of 18 U.S.C. § 371.

Respectfully submitted,

_____
Steven P. Ochocki
Special Agent
Social Security Administration
Office of the Inspector General

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone on February 4, 2025 and I find probable cause.

_____
Hon. Christina A. Bryan
United States Magistrate Judge